**John W. BOWDEN, for himself and for all others similarly situated, Plaintiff,**

**v.**

**R. E. STACEY et al., Defendants.**

**Civ. A. No. 5759–69.**

United States District Court,
S. D. Alabama, S. D.

Jan. 26, 1970.

As Modified Jan. 27, 1970.

Bert S. Nettles, Mobile, Ala., for plaintiff.

Gordon Madison, Asst. Atty. Gen. of Ala., Montgomery, Ala., Nicholas S. Hare, Monroeville, Ala., for defendants.

## ORDER

PITTMAN, District Judge.

This action was commenced by John W. Bowden, a resident citizen of Monroe

County, Alabama, a taxpayer and duly qualified and registered voter in Monroe County. The plaintiff brings this action on his own behalf individually, and on behalf of all others similarly situated in Monroe County, against R. E. Stacey, et al., as Members of the County Commission of Monroe County, Alabama, et al., seeking to have the one-man one-vote principle of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), applied to the election of the members of the County Commissioners of Monroe County, Alabama. The plaintiff seeks to have portions of Sections 1 and 2 of Act #211, Local Acts of the Alabama Legislature, 1939, p. 109, et al., pertaining to the apportionment of the County Commission of Monroe County, Alabama, declared unconstitutional and to have the Commissioners of Monroe County be elected on an at-large basis, or the county be reapportioned by this court on a substantially equal basis in population, and an election be held for the reapportioned Commissioners Districts.

In their answer and cross-complaint, the defendant members of the County Commission asked the court to take and hold jurisdiction of this matter pending redistricting by the legislature, and decree that the members of the County Commission be elected on an at-large basis with a district residency requirement, or reapportion Monroe County by adjusting the boundaries of the four districts, or by combining the present four districts into two districts on a substantially equal population basis. These defendants petitioned the court to permit the serving out of the four year terms the defendant Commissioners, Walter L. Agee and F. S. Steele, were elected to in 1968. This petition was later modified as will appear herein.

This matter came on to be heard on January 7, 1970, with counsel appearing for the plaintiff and defendants R. E. Stacey, Walter L. Agee, Fonde T. Williams, F. S. Steele, as members of the County Commission of Monroe County, and MacDonald Gallion as Attorney General, State of Alabama. No appearance was made by or for the other named defendants. A Judgment by Default is hereby entered against all other parties.

## FINDINGS OF FACT

Monroe County is located in southwest Alabama. Monroeville is the county seat and the largest town. Monroeville is in Beat 3. There are several rather densely populated rural areas outside the city limits. In 1960, Monroeville had a population of 2,772. The total registered voters in Beat 3 is 3,404 of the total 10,-467 registered voters in the county.

Monroe County is a predominantly rural county with 83.7% of the population rural.

The evidence is without conflict that the registered voters percentagewise closely parallels the population figures in all Beats. Act #211, supra, (hereinafter referred to as Act #211) divided the county into four Commissioners Districts, each comprised of the following number of registered voters, to wit:

| District #1 | 3,790 | Stacey |
| District #2 | 3,785 | Agee |
| District #3 | 1,592 | Williams |
| District #4 | 1,300 | Steele |
| Total | 10,467 | |

The Probate Judge is an ex officio member of the Board of County Commissioners, serves as President but votes only in the event of a tie.

Act #211 requires that a commissioner reside in the district for which he qualifies and that the respective districts elect its commissioner.

The Probate Judge is required to reside in Monroe County. He is elected by the voters at large in the county. These provisions are not in Act #211.

While many of the commissioners' functions are rural orientated, i. e., roads, bridges, etc., it has general governmental powers over all the residents of the county and provides governmental services to urban residents. The revenue for rural and urban services is received from residents who live within

the towns and cities as well as from those who live outside the towns and cities.

The municipal government's jurisdiction is limited to the corporate and police jurisdiction limits.

On the hearing of this cause, the defendants proposed two redistricting plans, Plan A and Plan B, (see defendants' Exhibits "D" and "E") which would divide the county into two commissioner districts, made up of four commissioners, with two commissioners residing in each of the two districts.

Each of the plans have combined into the two districts the present four districts with minimal changing of the district lines save and except to make two large districts rather than four small districts. One of the plans, defendants' Exhibit "E" (hereinafter referred to as Plan B) appears superior to Plan A. Plan A is obviously gerrymandered and all beats are *not* contiguous. In Plan B, the beats within a district are contiguous.

Plan B divides Beat 5. Beat 5 has two voting boxes, Beat 5A and Beat 5B. Beat 5A is placed in District 2 and Beat 5B is placed in District 1.

The only other geographical change in the consolidation of the four districts into two districts is the transfer of Beat 2 to District 1, and Beats 3 and 4 to District 2.

In Plan B, proposed District 1 would have 5,241 voters and District 2 would have 5,226 voters.

All the evidence before the court, including that of the entire Monroe County Board of County Commissioners and its ex officio member and chairman, the Probate Judge, is that Plan B is a fair and equitable division of the county considering economic, social, and political factors. It is accomplished with a minimum realignment of geographical and political areas. The total county registered voters is 10,467. The mathematical equality (which is not the only factor to be considered) would be *5,233 to each* district against the proposed *5,241 in District 1* and *5,226 in District 2.*

Two of the three legislatures representing Monroe County in the State Legislature, one senator and one representative, testified it was their judgment that the Commissioners were the best qualified people in Monroe County to redistrict the county and said, in effect, that if the legislature was in session and a majority of the Monroe County Board of Commissioners presented a plan for redistricting, they would seek to have such legislation enacted. It was their judgment that Plan B was a fair and equitable plan.

The plaintiffs join with the defendants in seeking approval of Plan B. All parties present join in requesting that the two commissioners for District 1, and the two commissioners for District 2, be required to be residents of their respective districts to qualify for election for such District, and the commissioners be elected by the county at large, save and except the ex officio member, the Probate Judge, whose residency and election requirements are not to be affected by this decree.

The evidence is uncontradicted that staggered terms for the commissioners is preferable. Act #211 provides for staggered terms. Staggering the terms insures continuity on the Board from election to election. Act #211 provides that Districts 1 and 3, which will make up new District 1, except as supra, will be elected in November, 1970, and that Districts 2 and 4 which will make up new District 2, except as supra, will be elected in November, 1972.

Under Act #211, for District 2, with 3,785 registered voters, Commissioner Agee was elected for a four year term in November, 1968, and for District 4, with 1,300 registered voters, Commissioner Steele was elected for a four year term in November, 1968, each term commencing January 1, 1969.

The four commissioners feel so strongly about the importance of stag-

gering the terms they have unanimously endorsed a proposal whereby Place #1 in new District 1, and Place #2 in new District 2, will be elected in November, 1970, for a term of four years commencing January 1, 1971, and be elected and serve every four years thereafter.

The proposal further provides Place #3 in new District 1, be elected for two years in the November, 1970, election, the term commencing January 1, 1971, and another election in November, 1972, for a term of four years commencing January 1, 1973, and be elected and serve every four years thereafter.

The effect of this proposal is to give continuity in each district with one commissioner in each of the new districts being elected every two years, preserving a pattern of staggered terms in each of the new districts. The ex officio member of the Board, the Probate Judge, is not in agreement with the staggering provision, contending that allowing one of the commissioners, Place #2 in District 2, to serve out the remaining portion of his term, having been elected from a malapportioned district, would be contra to Avery v. Midland County, infra.

## CONCLUSIONS OF LAW

Act #211 established a Board of Commissioners which divided the county into four commissioner districts in Monroe County, Alabama, as hereinbefore set out.

■ The districts are set up under Act #211 are malapportioned, ranging from 1,300 voters in District 4 to 3,790 voters in District 1.

This court finds that those portions of Act #211 establishing the four commissioner districts fails to satisfy the requirements of the Equal Protection Clause of the Constitution and are therefore null and void. The Supreme Court of the United States, in a case involving a County Commissioners Court, held that it was a unit of local Government and must comply with the one-man, one-vote principle of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964):

"* * * We hold * * * a resident of Midland County, has a right to a vote for the Commissioners Court of substantial equal weight of the vote of every other resident. * * *

"We * * * see little difference, in terms of the application of the Equal Protection Clause and of the principles of Reynolds v. Sims, between the exercise of state power through legislatures and its exercise by elected officials in the cities, towns, and counties. * * *" Avery v. Midland County, Tex., 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, 48, 51.

Act #211 fails to provide for voters of substantially equal weight as that term has been defined by the Supreme Court. See Kirkpatrick v. Preisler, 394 U.S. 526, 89 S.Ct. 1225, 22 L.Ed.2d 519 (1969); Wells v. Rockefeller, 394 U.S. 542, 89 S.Ct. 1234, 22 L.Ed.2d 535 (1969); Wesberry v. Sanders, 376 U.S. 1, 7–8, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

■ It has been recommended to the court by all parties that the county be redistricted by creating two new districts using registered voters as a basis for the newly apportioned districts. Use of registered voter figures as an index for districting in lieu of population figures is constitutionally permissible. Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376.

This court, on the 31st day of December, 1969, for the Middle District of Alabama, Eastern Division, Reynolds v. Gallion, ex rel. Attorney General of Alabama, 308 F.Supp. 803, held:

"Courts should be sensitive to economic, social and political factors which are vital to fair and representative districting."

and observed:

"* * * The *deliniation* of political districts *involves consideration of factors beyond the mere mathematical* application of equal population standards —factors thought to be * * *.

"[R]eapportionment requires the consideration of 'political' factors which should not be entrusted to the judiciary. \* \* \*" (Emphasis added.) Martin, County Reapportionment in Virginia, 55 Va.L.Rev., pp. 1177, 1179 (1969).

■ The case sub judice is distinguishable from the Reynolds v. Gallion case in that herein the evidence from witnesses completely familiar with the factors above described is uncontradicted that the proposed redistricting Plan B *meets fairly and equitably the* economic, social, and political factors which are vital to fair and representative districting and meets the mathematical application of equal population standards of Avery v. Midland County, and other citations, supra.

■ This court is further persuaded from the uncontradicted evidence that the staggering of terms in each of the districts as proposed, supra, is desirable and is in keeping with the spirit of the expression on this by the legislature of Alabama in Act #211.

This court is reluctant to act in this case without first giving the State of Alabama Legislature an opportunity to redistrict in accordance with Avery v. Midland County, supra, but unless a special session is called, the next legislature will not meet until May, 1971, and there will not be another general election after November, 1970, until November, 1972. Therefore, this court is acting without such a delay, but believes that the pattern of staggered terms as hereinabove set out should be preserved.

Of the two office holders who have served only one year of their four year terms, i. e., District Commissioner #2, Agee, and District Commissioner #4, Steele, elected under the malapportioned plan, the latter district commissioner's place whose district was smaller with the voters therein having a weighted vote of greater vote value than the commissioner, Agee, elected from the District 2 with a much larger number of voters. has volunteered, and the court holds, an election should be required for said Place #4, District 2, in November, 1970, for a two year term, and Place #4, elected and serve a four year term thereafter. Place #2 District 2, the same as District 2 under Act #211 and now held by Commissioner Agee, will not be required to be elected until November, 1972, for a four year term commencing January 1, 1973.

■ These following findings are made with reference to this part of the order which permits Commissioner Agee, elected to a four year term commencing January 1, 1969, as Commissioner for District 2, to serve out the remainder of the four year term in Place #2 of the (New) District 2. This is done because of several factors, including the following: the uncontradicted evidence that staggered terms for the Board are desirable, the reluctance of this court to shorten any elected official's term of office by judicial decree, the importance of staggered terms to Board members as demonstrated by the Board agreeing to stagger the terms with two incumbents voluntarily offering that Place #2, (New) District 1 term be elected for two years rather than four years in November, 1970, and the Commissioner for District 4, now Place #4, (New) District 2, voluntarily offering that his four year term for which he was elected commencing January 1, 1969, be reduced at this time to a two year term and this Place #4 be up for election in November, 1970, with the new term commencing January 1, 1971. Further consideration is given to the factor of the late filing of the complaint by the plaintiff, to wit, November 14, 1969. It should have been apparent to anyone familiar with legislative processes, or could have been ascertained by almost casual inquiry, that by midsummer 1969 such reapportionment would not be passed by the Alabama Legislature then in session. Furthermore, action on the November 14, 1969, complaint, in all fairness to everyone involved, should be determined not later than January, 1970, so the public could be informed and those desiring to be candidates on the Demo-

cratic ticket in 1970 could meet the party deadline of *March 1, 1970,* and the possible candidates on other tickets could be making their preparations. In order to meet this contingency, this matter was taken out of order and given a priority setting.

The court takes cognizance of the plaintiff's contention, and it is a fact, that the Commissioner of old District 2 (New Place #2, District 2) was elected by a malapportioned district. The district at the time he was elected had 3,785 votes, one of the larger districts. In weighing all equities, circumstances, and problems involved herein, it appears fair and equitable that Commissioner Agee be allowed to serve out the term for which he was elected. 27 AM. Jur. 2d, Equity, Sections 102, 104, 107, and 30A C.J.S. Equity § 599.

In accordance with the foregoing, it is the order, judgment and decree of this court that the *provisions* of Act #211, Local Acts of the Alabama Legislature, 1939, p. 109 et al., "AN ACT to abolish the Board of Revenue of Monroe County and to establish in lieu thereof a commission form of government * * *" *as hereinafter set out,* be, and the same are, stricken and hereby declared void and unconstitutional: At page 110, Section 1, the following:

"That said County shall be, and is hereby divided into four Commission Districts to be numbered One, two, three and four, as follows: District number One shall embrace Beats number one, thirteen and fourteen as their boundaries are now established by law and constituted authority; District number Two shall embrace Beats number two, three and four as their boundaries are now established by law and constituted authority; District number Three shall embrace Beats number five, six, seven and eight as their boundaries are now established by law and constituted authority.

District number Four shall embrace Beats nine, ten, eleven and twelve as their boundaries are now established by law and constituted authority.", and

"[T]he term of office of the Commissioner from District One shall commence with his qualifying under this Act and shall terminate on the 31st day of December, 1942, and thereafter shall be for four years commencing on the 1st day of January, 1943, and on the 1st day of January of each fourth year thereafter. The term of office of the Commissioner from District Two shall commence with his qualifying under this Act and shall terminate on the 31st day of December, 1940, and thereafter shall be for four years, commencing on the 1st day of January, 1941, and on the 1st day of January of each fourth year thereafter. The term of office of the Commissioner from District Three shall commence with his qualifying under this Act and shall terminate on the 31st day of December, 1942, and thereafter shall be four years commencing on the 1st day of January, 1943, and on the 1st day of January of each fourth year thereafter. The term of office of the Commissioner from the Fourth district shall commence with his qualifying under this Act and shall terminate on the 31st day of December, 1940, and thereafter shall be for four years commencing on the 1st day of January, 1941, and on the 1st day of January of each fourth year thereafter."

All of Section 2, [beginning] "That at the general election * * *" [and ending] "shall be elected by the vote of their respective districts." [1]

It is the further order, judgment and decree of this court that the defendants, their successors in office, or those acting in their behalf or in concert with them, be, and each is, hereby enjoined

1. See Act #211, supra, Section 13 at p. 118, "That if any section, paragraph, division or portion of this Act shall be declared unconstitutional or void for any reason, it shall not affect the validity of the remaining sections, paragraphs, provisions or portions of this Act."

from conducting or permitting to be conducted any election pursuant to those portions of Act #211 hereinabove stricken and declared to be void and unconstitutional.

It is the further order, judgment and decree of this court that Monroe County Commission be and is reapportioned according to Plan B, defendants' Exhibit "E", hereby made part of this decree, the same as if set out herein at length, creating District 1 of Monroe County, Alabama, composed of Beats 1, 2, 5B, 6, 7, 8, 13, and 14 and District 2 composed of Beats 3, 4, 5A, 9, 10, 11, and 12; and that District 1 have two commissioners designated as Place #1 and Place #3 (in lieu of former District 1 and District 3), and District 2 have two commissioners designated as Place #2 and Place #4 (in lieu of District 2 and District 4). The commissioners are to be residents of their respective districts and are to be elected by the county at large.

It is the further order, judgment and decree of this court that the terms of the Commissioners be staggered as follows:

### (New) DISTRICT 1

Place #1 is to be elected in November, 1970, for a four year term of office commencing January 1, 1971, and respectively elected and serve every four years thereafter.

Place #3 in District 1 is to be elected in November, 1970, with the term of office commencing January 1, 1971, for a period of two years. Place #3 will be elected in November, 1972, for a four year term of office commencing January 1, 1973, and respectively elected and serve for every four years thereafter.

### (New) DISTRICT 2

Place #2, with Commissioner Agee now serving as Commissioner for District 2 under Act #211, is to be filled by his serving the remainder of his elected four year term. Election for Place #2 is to be in November, 1972, and the term of office to commence for a period of four years beginning January 1, 1973, and respectively elected and serve every four years thereafter.

Place #4 in District 2 will be elected in November, 1970, for four years commencing January 1, 1971, and respectively elected and serve every four years thereafter.

It is the further order, judgment and decree of this court that the defendants, their successors in office and those acting in their behalf or in concert with them, be, and each is, hereby enjoined from failing to conduct or cause to be conducted not later than November, 1970, an election for Place #1 and Place #3 in (New) District 1, and Place #4, (New) District 2, as set out above for the districts in accordance with Plan B, Appendix A of this decree, which are for three of the County Commissioners heretofore elected from Commissioners Districts 1, 3, and 4 of Act #211 for Monroe County.

And, the defendants, their successors in office, and those acting in their behalf or in concert with them, be and each is, hereby enjoined from failing to conduct, or cause to be conducted, not later than November, 1972, an election for Place #2 (New) District 2, in accordance with Plan B, Appendix A of this decree and as hereinabove set out. The nominees for Place #1 and Place #3, (New) District 1, and for Place #2 and Place #4, (New) District 2, shall be residents of said respective districts. Provided, however, nothing herein shall prevent the legislature from providing for a plan of apportionment which meets constitutional requirements in lieu of this plan. Such plan may be substituted for the plan herein set out upon approval by this court.

It is the further order, judgment and decree of this court that the Commissioners heretofore elected, and now serving in office, shall continue to serve in their respective offices until the elections as set out in this decree have been conducted and their successors have taken office

in accordance with the terms of this decree.

It is the further order, judgment and decree of this court that jurisdiction of this cause be, and the same is, hereby retained until a constitutionally acceptable apportionment is enacted by the legislature and approved by this court.

The costs in this case are hereby taxed against the defendant Commissioners R. E. Stacey, Walter L. Agee, Fonde T. Williams, and F. S. Steele, and Probate Judge David M. Nettles.